Berniece M. THORNBRUGH and Robert W. Thornbrugh and Maxine Thornbrugh, Plaintiffs-Appellants,

v.

Homer E. POULIN, Individually, Homer Edmond Poulin, Trustee of Poulin Trust, and Ozark Concrete Company, a Corporation, Defendants-Respondents.

No. 13233.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 24, 1984.

Motion for Rehearing or to Transfer to Supreme Court Denied
October 10, 1984.

Application to Transfer Denied
Nov. 20, 1984.

Benjamin J. Francka, Paul Reichert, Springfield, for plaintiffs-appellants.

Marvin Motley, Branson, for defendants-respondents Poulin.

Warren S. Stafford, Monte P. Clithero, Taylor, Stafford & Woody, F. William Joyner, Miller, Sanford, Joyner, Westbrooke & Tyndall, Springfield, for defendant-respondent Ozark Concrete Co.

GREENE, Judge.

Berniece, Robert and Maxine Thornbrugh sued defendants Poulin and Ozark Concrete Company (Ozark) in a five-count petition, seeking an injunction to prevent defendants from interfering with the use of plaintiffs' property by the operation of a rock quarry, and seeking actual and punitive damages for damage to their property and interference with its use. The Thornbrughs requested a jury trial on the damage issues, which request was denied. After trial by court, findings of fact, conclusions of law and a judgment were filed.

In its findings of fact, the trial court found as follows. Berniece Thornbrugh owned certain real estate in Taney County, Missouri, and Robert and Maxine Thornbrugh resided in their 1971 mobile home that was located on Berniece's property. Defendant Homer Edmond Poulin, trustee of the Poulin trust, owned property immediately to the west of the Thornbrugh real estate, a portion of which had been leased to Ozark for the operation of a rock quarry. The quarry was in operation prior to the time Berniece purchased her property. Robert and Maxine also knew of the existence of the quarry when they moved their mobile home onto Berniece's land in 1975.

Ozark began operating the quarry under their lease in 1978. In the course of Ozark's business of operating the quarry, it was necessary to use explosives to break up rock prior to processing it. These blasting operations were conducted at a distance of approximately 1100 to 1200 feet from Berniece's property except on one occasion when the blasting occurred approximately 600 feet from Berniece's property. On that occasion, rocks and mud were thrown on Berniece's property, but no damage was sustained to her property as the result of

that blast, or from any other blasting operations by Ozark.

The noise level from the detonation of the explosives was reasonable for the area where the quarry was located. The court further found that use of the Poulin property by Ozark for the operation of a rock quarry was reasonable, and that the operation of the quarry was being conducted in a reasonable manner not hazardous to the Thornbrughs.

In its conclusions of law, the trial court held Ozark's operation of the quarry did not constitute a nuisance, but that setting off blasts within 600 feet of the trailer and house located on plaintiffs' premises, or setting off explosive charges when the wind was from the west, which created a dust factor, would constitute a nuisance. The trial court further found that the property of the Thornbrughs had not been damaged by the blasting, and that their use and enjoyment of their property had not been interfered with, limited or curtailed as the result of the operation of the quarry by Ozark. In its judgment, the trial court enjoined Ozark from blasting or setting off explosive charges within 600 feet of plaintiffs' "trailer and house," or from throwing rocks or debris on plaintiffs' property, or from setting off explosive charges when the wind was west to east. The trial court found for the defendants and against the plaintiffs on all other issues, and taxed the costs against Ozark. This appeal followed.

■ In their first point relied on, the Thornbrughs contend that the denial by the trial court of their request for a jury trial on the actual and punitive damage claims, which were Counts II, III, IV and V of their petition, violated their constitutional right to a jury trial given them by the Seventh Amendment to the United States Constitution and art. 1, § 22(a) of the Missouri Constitution. Their argument might have had some validity if their request for equitable relief had been denied, as was the case in *Sapp v. Garrett*, 284 S.W.2d 49, 52 (Mo.App.1955), cited by plaintiffs as authority for their argument on this issue.

**418**

Here, plaintiffs asked for both equitable (injunction) and legal (money damages) relief. In the opinion of the trial judge, the "equitable clean-up doctrine" applies in Missouri, which means that where a petition requests both legal and equitable relief, unless the equitable issue is resolved before trial, or unless the trial court, after hearing evidence, determines that an equitable remedy is inappropriate, the trial court, sitting without a jury, has jurisdiction to hear and decide the legal issues, as well as the equitable ones. We agree with the trial judge, as the law of Missouri recognizes the equitable clean-up doctrine, subject to a finding, as was the case here, that some equitable right of the plaintiffs had been violated. *Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316, 325 (Mo. banc 1979); *State ex rel. Willman v. Sloan,* 574 S.W.2d 421, 422–423 (Mo. banc 1978); *Shelter Mut. Ins. Co. v. Parrish,* 659 S.W.2d 315, 318 (Mo.App.1983). See also O'Neil, Law on Equity: The right to trial by jury in a civil action, 95 Mo.Law Rev. 43, 48 (1970). The trial court did not err in denying the request for jury trial on the issue of damages.

In their next three points, plaintiffs argue that the trial court's findings that 1) Ozark's operation of the quarry did not constitute a nuisance that interfered with plaintiffs' enjoyment of their property, and 2) plaintiffs' trailer and house had not been damaged, and 3) their use and enjoyment of their property had not been interfered with by reason of Ozark's operation of the quarry were against the greater weight of the evidence.

 This was a hotly contested case. Eleven witnesses testified for plaintiffs and nine for the defendants. Over 100 exhibits were admitted into evidence. The transcript of the trial court's proceedings numbers 795 pages. The testimony, understandably, was conflicting. Some of plaintiffs' witnesses were related to them, while others, who owned property near the quarry, stood to gain if the Thornbrughs prevailed. Conflicts in the evidence are for the trial court to resolve, and the trial court

is in a much better position than we are to determine credibility, and, when sitting as a trier of fact, may believe all or any part of the testimony of any witness. *Trenton Trust Co. v. Western Sur. Co.,* 599 S.W.2d 481, 483 (Mo. banc 1980). We should not set aside a judgment on the grounds that it is against the weight of the evidence unless we have a firm belief that the judgment is wrong. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We have no such belief in this case.

 Our review of the record convinces us that there was substantial evidence to support the findings of the trial court that plaintiffs had not suffered any actual damages by the operation of the quarry and that plaintiffs were not entitled to a judgment enjoining unlimited operation of the quarry. We recognize that since the trial court found that Ozark did cause rocks and mud to be thrown onto Berniece Thornbrugh's property on one occasion, it might be claimed that plaintiffs were entitled to at least an award of nominal damages, even though there was a failure of proof of actual damages. *Wente v. Shaver,* 350 Mo. 1143, 1155, 169 S.W.2d 947, 954[5] (1943). We decline to so hold because 1) while a judgment for nominal damages is a substantial right since it may decide the court costs, here no substantial rights of the plaintiffs were violated, as the costs were assessed against defendant Ozark, [*Curd v. Reaban,* 232 S.W.2d 389, 392 (Mo.1950)], and 2) the claim for nominal damages was not raised by plaintiffs in their points relied on portion of their brief filed here, and the issue was therefore abandoned. *Pruellage v. De Seaton Corp.,* 380 S.W.2d 403, 405 (Mo.1964); *School Dist. of Springfield R–12 ex rel. Midland Paving Co. v. Transamerica Ins. Co.,* 633 S.W.2d 238, 253 (Mo. App.1982). Points two, three and four are denied.

In their remaining point relied on, plaintiffs claim the trial court erred in not awarding them punitive damages because their damage resulted from intentional, willful and deliberate acts of defendants, after they had learned operation of the

quarry was damaging plaintiffs and their property.

Under Missouri law, in order to obtain punitive damages, there must first be a finding of actual damages. *Compton v. William Bros. Pipeline Company,* 499 S.W.2d 795, 797 (Mo.1973). There was no finding of actual damages in this case. Point five has no merit.

The trial judge in this case, in addition to hearing the witnesses and viewing the exhibits, went to the areas mentioned in evidence, viewed plaintiffs' property and defendant rock quarry, and inspected the mobile home and house claimed to have been damaged by the blasting. He had the opportunity, based on fact and a determination of what witnesses were credible, to resolve the conflicts in the testimony and enter a judgment based on substantial evidence which was not against the weight of the evidence, and was not based on an incorrect declaration or application of law. The record indicates that he correctly performed that task.

Judgment affirmed.

TITUS, P.J., and FLANIGAN, J., concur.