**Stella HULSHOF and Robert Hulshof,
Appellants–Respondents**

v.

**NORANDA ALUMINUM, INC., a
corporation, Respondent–
Appellant.**

**Nos. 17628, 17684.**

Missouri Court of Appeals,
Southern District,
Division One.

June 3, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 25, 1992.

Application to Transfer Denied
Sept. 22, 1992.

James E. Reeves, Ward & Reeves, Caruthersville, Charles Sampson Williams, Welman, Beaton, Williams & McVey, Kennett, for appellants/respondents Hulshof.

Lawrence H. Rost, New Madrid, Clifton A. Lake, McBride Baker & Coles, Chicago, for respondent/appellant Noranda.

PARRISH, Judge.

Robert and Stella Hulshof (plaintiffs) brought an action against Noranda Aluminum, Inc. (Noranda), Associated Electric Cooperative, Inc. (AECI), and the City of New Madrid, Missouri (New Madrid), alleging that the discharge of drainage water from industrial premises located at St. Jude Industrial Park, New Madrid, Missouri, and operated by Noranda and AECI, constituted a nuisance in that the discharged water contained "industrial wastes, contaminants, pollutants and toxic chemicals" and flowed through "Drainage Ditch 29, a public drainage ditch," that crossed a farm owned by Stella Hulshof and operated by Robert Hulshof, her son. Plaintiffs alleged that the drainage ditch overflowed from time to time; that when the drainage ditch overflowed, the discharged water, together with the industrial wastes, contaminants, pollutants and toxic chemicals it contained, "inundated and covered" parts of the farmland. Their petition asserted that the discharge of drainage water by Noranda and AECI "caused the industrial wastes, contaminants, pollutants and toxic chemicals to be deposited on ... approximately 272 acres" of the farmland.

Plaintiff Stella Hulshof sought damages for the reduction of the fair market value of her real estate (Count I). Plaintiffs Stella Hulshof and Robert Hulshof sought damages for diminished production and destruction of crops on the premises (Count II), together with actual and punitive damages for impairment of their "right to use and enjoy their farm land and crops growing thereon" (Count III). Plaintiff Stella Hulshof also sought actual and punitive damages for substantial impairment of her right to use and enjoy her farm land, alleging that the conduct of Noranda and AECI showed "a complete indifference or conscious disregard for the safety of others" (Count IV). Plaintiffs also alleged that the premises were threatened with continued impairment by the continued discharge of industrial wastes, contaminants, pollutants and toxic chemicals by Noranda and AECI and sought a permanent injunction against Noranda and AECI continuing to discharge those substances into Drainage Ditch 29 (Count V).

Plaintiffs voluntarily dismissed their action against defendants AECI and New Madrid prior to trial. Following a jury trial, verdicts were returned in favor of Noranda on Counts I, II, III and IV. Judgment for Noranda was entered in accordance with the verdicts. The trial court thereafter considered and determined Count V on the basis of the evidence presented at the jury trial and evidence presented at an evidentiary hearing held some three months after the jury trial was concluded. The trial court found the issues presented in Count V in favor of plaintiffs and issued its decree enjoining Noranda, "its agents, servants and employees ... from discharging its surface water and industrial waste water ... into the St. Jude Industrial Park Ditch into Drainage Ditch 29."

Plaintiffs appeal the entry of the judgment in favor of Noranda on Counts I, II, III and IV (Case No. 17628). Noranda appeals from the decree granting the injunction in Count V (Case No. 17684). This court affirms in both 17628 and 17684.

Facts in addition to those set forth above, to the extent necessary to resolve the points on appeal, will be set out in the following parts of this opinion.

### Appeal No. 17628

Plaintiffs, for their appeal, present one point. Plaintiffs contend that the trial court erred by overruling their motion for new trial because the jury, when it returned its verdicts in favor of Noranda, also returned a hand-written statement, signed by each juror, "that conclusively establishe[d] ... that the jury found Noranda's conduct to be culpable and that

punitive damages should be awarded if Noranda did not immediately stop the discharge of its pollutants and industrial waste."

During the jury's deliberations in the separate trial of Counts I, II, III and IV, the trial court received a written question from the jury. The question was, "Can we add a written statement to be read at the conclusion of the verdicts?" After a brief discussion, the following occurred:

THD [sic] COURT: I've written a response. The response just says: "Yes, if you wish." I've signed it, "Fred W. Copeland, Circuit Judge." And I've written it at the bottom of their note, which has been marked Court's Exhibit 7, and I'll ask the Bailiff to return it to the jury. Any objection to that, Mr. Rost?

MR. ROST (attorney for Noranda): No objection, Your Honor.

THE COURT: Mr. Reeves?

MR. REEVES (attorney for plaintiffs): No objection, Your Honor.

Shortly thereafter, the jury returned to the courtroom and advised the court that it had "reached a verdict as to each of the four issues that were presented to the jury." The judge requested the foreman to hand the verdict forms and the instructions to the bailiff. The foreman then stated, "We have an additional sheet we'd like to add." Upon inquiry by the judge as to its nature, the foreman started to explain, "It represents a statement from the jurors concerning—"; whereupon the judge instructed, "Well then, I'll allow you to read it when we conclude. Just hang onto that." The judge read the four verdicts that were received from the jury. All four verdicts found in favor of Noranda.

After the judge had read the verdicts and determined from the foreman that they were "the respective verdicts of the jury," the following occurred:

THE COURT: All right. Before we proceed further there is, there was a note that said the jury would like to make some type of a statement. and [sic] I believe you have a handwritten statement which I'll allow you to read at this time, Mr. McKeel.

FOREMAN: Okay. The statement reads:

"In lieu of punitive damages for the Hulshofs, we implore Noranda Aluminum, Inc. to extend funds as required to divert all discharges that now enter Ditch 29 into the Mississippi River as soon as possible."

Dated March 4, 1991. And there are twelve signatures on this document.

THE COURT: All right, sir, if you'll hand that—Wally, we'll mark that. It will be marked as Court's Exhibit No. 8.

Gentlemen, first, Mr. Reeves, on behalf of the Plaintiffs, before I discharge the jury, is there anything we need to take up on behalf of the Plaintiffs?

MR. REEVES: No, sir.

THE COURT: Mr. Lake, on behalf of the Defendant is there anything we need to take up before I discharge the jury?

MR. LAKE: No, sir.

The judge then thanked the jurors for their services and discharged the jury.

■ Noranda presents two points in opposition to plaintiffs' appeal. Noranda contends that the trial court did not err in denying plaintiffs' motion for new trial in view of the jury's hand-written statement. It claims that the statement was "mere surplusage." It further contends that plaintiffs did not perfect their complaint that the jury's hand-written statement was inconsistent with the general verdicts rendered for Noranda because plaintiffs did not raise any objection as to the alleged inconsistency until after the jury was discharged.

If the hand-written statement of the jury is merely gratuitous and does not suggest impropriety, it constitutes surplusage and can be ignored. *Valiant v. American Family Mut. Ins. Co.*, 698 S.W.2d 584, 586 (Mo.App.1985). However, the question of whether the statement is surplusage will be moot if Noranda is correct in asserting that plaintiffs cannot now raise the issue that the verdicts were inconsistent with the statement because they failed to object on that grounds before the jury was discharged.

In *Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986),[1] the supreme court pronounced:

We now hold that a claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged. Otherwise the claim of inconsistency will be held to have been waived. The reason is that, if the point is raised as soon as the verdict is returned, any error is capable of correction by ordering the jury to return for further deliberation. Our holding is in accord with the usual rule that the trial court must be given the opportunity to correct error while correction is still possible.

Missouri Approved Jury Instructions includes a pattern instruction for use when it is necessary for a trial court to direct that a jury return for further deliberations when the jury has attempted to return a verdict that is inconsistent, incomplete, ambiguous or otherwise erroneous. *See* M.A.I. 2.06 (1983 New).

Plaintiffs attempt to distinguish the facts in *Douglass* from the facts in this case by asserting that *Douglass* "involved verdicts that were, ' * * * not necessarily inconsistent.' " Plaintiffs, referring to *Douglass*, assert, "The case did not involve the separate, unanimous statement by the jury rendered by agreement of the parties which impeached the formal written verdicts." In their reply brief, plaintiffs contend that to have objected to the acceptance of the verdicts in the form they were received as being inconsistent or otherwise incomplete would have served no purpose. They infer that the problem presented by their appeal could not have been satisfactorily handled at that time, suggesting that "a set of [pattern] instructions to handle this situation" could not be drafted.

 This court finds the holding in *Douglass v. Safire, supra,* to be applicable. The time for resolving any perceived problem that the hand-written statement presented was when that statement was received, before the jury was discharged. The fact that an instruction problem would have had to have been addressed is, by no means, insurmountable. The trial court, upon a timely objection by plaintiffs to the verdicts could have undertaken an appropriate modification of M.A.I. 2.06. The fact that an exact pattern instruction does not exist to cover all fact situations is recognized in Committee Comment (1991 Revision) to Missouri Approved Jury Instructions (4th edition). Those comments include the assessment at page XXXIII, "Before you can use this book you must understand Civil Rule 70 which prescribes procedures for instructing civil juries and Rule 71 which limits the verdicts which may be returned by civil juries." And at page XXXV, "A modification which is necessary to make a provided MAI fit the facts of your case, however, is not only permissible but is required."[2]

1. *See also, O'Brien v. Mobil Oil Corp.,* 749 S.W.2d 457 (Mo.App.1988). *O'Brien* relied upon *Douglass* in upholding a verdict that awarded no actual damages but $2,500 punitive damages against each defendant (there were two defendants). Although the verdict was inconsistent in that it awarded punitive damages without awarding actual damages, since the party who appealed did not raise the issue that the verdict was inconsistent and did not request that the jury be returned for further deliberations to clear up the inconsistency before the jury was discharged, the appeal was denied.

2. Rule 70.02(b) and (e), respectively, state:
Whenever Missouri Approved Instructions contains an instruction applicable in a particular case which the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other on the same subject.

and,
Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.

Rules 71.01 and .02, respectively, state:
The verdict of a jury is either general or special. A general verdict is one by which the jury pronounces generally upon all or any of the issues, either in favor of the plaintiff or defendant, and includes a verdict wherein the jury returns a finding of the plaintiff's total damages and assesses percentages of fault. A special verdict is one by which the jury finds the facts only, leaving the judgment to the court.

and,

Plaintiffs also contend that the handwritten statement of the jury was "rendered by agreement of the parties" and was thereby afforded a special status. The acceptance of that contention would be the adoption of a procedure that is diametrically opposite to the holding in *Douglass*. *Douglass* requires a timely objection to be made to the trial court prior to when the jury is discharged. It was plaintiffs who had the obligation to object to the verdicts since they contend that the verdicts were inconsistent. There is no basis to fault Noranda for its silence. Plaintiffs' point on appeal in Case No. 17628 is without merit.

### Appeal No. 17684

Noranda's appeal is directed to the injunction that the trial court entered enjoining Noranda from continuing to discharge industrial waste waters and storm water into Drainage Ditch 29.

Plaintiffs' request for injunctive relief was set forth in Count V of the petition upon which this case was tried, the "First Amended Petition for Damages and Injunction." As originally prepared, the amended petition alleged that Noranda's use of its premises to discharge waste water through Drainage Ditch 29 constituted "a permanent nuisance." Immediately prior to trial, plaintiffs requested leave to amend the first amended petition by striking the word "permanent" each place that word appeared in front of the word "nuisance" throughout the petition. Plaintiffs were permitted to make those amendments without objection by Noranda.

Count V, being an action in equity, was tried without a jury. It is reviewable under Rule 73.01.

The judgment of the trial court must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. In considering whether the judgment of the trial court is "against the weight of the evidence," this court may exercise its power to set aside the judgment of the trial court only with caution and only if it possesses a firm belief that the judgment is wrong. In undertaking this review, this court is mindful of the opportunity of the trial court to have judged the credibility of the witnesses and gives due regard thereto. [Citations omitted.]

*Chowning v. Magness*, 792 S.W.2d 438, 439 (Mo.App.1990). The trial court was the finder of facts with respect to Count V. As such, "it may believe or disbelieve all, part or none of the testimony of any witness." *Frost v. Taylor*, 649 S.W.2d 264, 265 (Mo.App.1983).

Plaintiffs, in Count V, sought an injunction to abate a nuisance. The relief sought was consistent with plaintiffs' pleadings as they were amended immediately prior to commencement of the earlier jury trial of Counts I through IV. "A nuisance is temporary if it may be abated, and it is permanent if abatement is impracticable or impossible." *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883 (Mo. banc 1985).

Noranda's first point alleges that the trial court erred in issuing the injunction because the findings of fact upon which the trial court relied in issuing the injunction were inconsistent and irreconcilable with the jury's verdicts that were also accepted by the court. Noranda contends that the injunction was not supported by substantial evidence and was against the weight of the evidence.

Noranda's first point is premised on the fact that the jury, in the trial of Counts I through IV, returned verdicts for Noranda, and the trial court entered judgment on those verdicts and "denied the [plaintiffs'] Motion for New Trial in which the [plaintiffs] contended that the jury's verdict was against the weight of the evidence." Noranda claims that "[b]y these actions, the Circuit Court accepted and adopted all of the jury's findings of fact." Noranda con-

---

In every issue for the recovery of money only, or specific real or personal property, the jury shall render a general verdict.

cludes that the trial court's "subsequent issuance of a permanent injunction ... on the basis of findings of fact which are irreconcilable with the jury's verdict, is not supported by substantial evidence and is against the weight of the evidence."

The trial court's injunction is set forth separately from the judgment entered on the jury verdicts. It included findings of fact applicable to its issuance. These include:

7. Noranda's manufacturing processes create industrial waste and pollutants, including fluoride and aluminum which are defined and regulated by the Missouri Department of Natural Resources and the Environmental Protection Agency. Noranda's waste water and surface water containing the pollutants are discharged from Noranda's premises in an outlet known as, "Outfall No. 4" which discharges into the St. Jude Industrial Park Ditch and from there, into Drainage Ditch 29, which drains through plaintiffs' farm.

. . . . .

9. The discharge of pollutants from Noranda's manufacturing processes into Drainage Ditch 29 has adversely affected and damaged the crops and the soil on plaintiffs' farm; that the extent of the damage to the said crops and soil is difficult to determine and, if not restrained, will continue to damage the soil and crops in the future and would of necessity cause multiplicity of suits at law for damages sustained each year and would progressively cause additional damage in the future, the amount of which would be difficult to determine.

10. The damage to the soil on the farm is cumulative and of long term consequences and will increase in the future if not restrained, and the future loss in market value of the farm is difficult to determine.

11. The plaintiffs do not have an adequate remedy at law and have and will suffer irreparable harm if Noranda's discharge of surface water into Ditch 29 is not restrained.

Plaintiffs and Noranda presented a substantial amount of evidence. The jury trial spanned nine days. The transcript of those proceedings is over 1,300 pages. Additional evidence that was directed only to Count V was presented on a later date. The transcript of it was another 95 pages. By stipulation of the parties, the trial court was to consider the evidence adduced at the jury trial together with the evidence adduced at the later evidentiary hearing in ruling on Count V.

Plaintiffs presented evidence that the soil on their farm contained a white crust of salt build-up and had a bad odor. Mussel shells had been found in fields. An assistant professor of agronomy at the University of Arkansas, Richard Maples, testified on behalf of plaintiffs. Mr. Maples testified that if the discharges from the Noranda facilities continued, the farm is "gonna get worse and worse." He stated:

Well, it's obviously, the water's toxic, we've seen all kind of fish kills out there, and the mussels, you can see plants have been killed. Very frankly the water's not safe for irrigation, it's not safe for drinking, it's not safe to wildlife, the plants that are growin' in the area are not safe for livestock. I wouldn't wanna eat fish out of the ditch. I wouldn't wanna eat game that's killed out there. And if I had a good hunting dog I wouldn't wanna take him down there where he could drink out of that ditch.

Noranda's witnesses included Dr. Paul Schwab. Dr. Schwab was employed by Kansas State University, Department of Agronomy. His educational achievements included a Ph.D. degree in Soil Chemistry from Colorado State University.

On cross-examination during the evidentiary hearing on Count V, Dr. Schwab[3] testified that there had been deposits of materials on plaintiff Stella Hulshof's farm as a result of Noranda's activities. He testified that fluoride had been deposited there. He also testified "that there is some aluminum oxide that comes down the ditch as well." When asked what else had

3. Dr. Schwab testified at both the jury trial and the evidentiary hearing on Count V.

been deposited on the Hulshof farm, he stated, "Beyond that, umm, I'm not familiar enough with what all Noranda uses and what they put in that ditch to really make a statement that I could, I could back one way or the other."

■ The jury could have found that, although the substances discharged by Noranda through Drainage Ditch 29 were harmful to the Hulshof farmland, the harmful effects of the substances were cumulative and of long-term consequence and that, at the time of jury trial, the invasion by Noranda had not become substantial, or, at that time, the invasion had not become unreasonable and damages were not then ascertainable. Any such determination would have been consistent with the trial court's findings regarding Count V that the continued operation of the Noranda facility "would progressively cause additional damage in the future"; that the damage was "cumulative and of long term consequences" that would "increase in the future if not restrained". Noranda's contention that the trial court's findings of fact as to Count V are irreconcilable with the jury verdict is inaccurate.

A party who creates a continuing nuisance "is under legal obligation to remove, change, or repair the structure or thing complained of, and thereby terminate the injury to his neighbor." *Kelly v. City of Cape Girardeau*, 338 Mo. 103, 89 S.W.2d 41, 44 (1935).[4] There was substantial evidence to support the findings that were made by the trial court and were the basis for the injunction. Noranda's first point is denied.

■ Noranda's second point asserts that the trial court erred in issuing the injunction because it must be proven, in order to grant injunctive relief, that substantial future harm was threatened. Noranda contends that there was no substantial evidence that plaintiffs were threatened with future harm and that their remedy at law was adequate. This point is directed to the requirement that to be entitled to an injunction, plaintiffs had to show that substantial

future injury was "actually threatened, not merely anticipated; and [was] practically certain, not merely probable." *Nothaus v. City of Salem*, 585 S.W.2d 244, 246 (Mo. App.1979). Since the request for the remedy of an injunction in this case was based upon the claim that a nuisance existed, plaintiffs also had to show that the use by Noranda of its property, about which plaintiffs complained, was an "unreasonable, unusual, or unnatural use" and that "it substantially impair[ed] the right of [plaintiffs] to peacefully enjoy [their] property." *Frank v. Environmental Sanitation Mgmt., supra*, at 880. Each case alleging nuisance is evaluated based on its own circumstances. *Id.* at 880–81.

Both of the issues identified, i.e., the certainty of substantial future harm and the nature of the use of Noranda's property, were addressed in the testimony of Mr. Maples and Dr. Schwab, as well as by other evidence that showed that Noranda discharged its waste waters that included industrial waste materials so that they flowed through Drainage Ditch 29 to and across the Hulshof farm. The trial court found that Noranda had caused a substantial increase in the amount of water damage to Ditch 29; that the ditch overflowed much more frequently and to a greater extent than when it drained only agricultural land. The trial court found that the pollutant discharges adversely affected and damaged crops and soil on the Hulshof farm. The trial court further found that if the discharge of pollutants from Noranda's facility continued, "it would continue to damage the soil and crops in the future." The trial court concluded that such a continuation "would of necessity cause a multiplicity of suits at law for damages sustained each year and would progressively cause additional damage in the future." These findings by the trial court disclose that Noranda used its property in an unreasonable, unusual, or unnatural use so as to substantially impair plaintiffs the right to peacefully enjoy the property that Stella

---

**4.** A discussion of the use of injunctions as a remedy for private nuisances can be found in Comment, *The Law of Private Nuisance in Missouri*, 44 Mo.L.Rev. 20, 79 (1979).

Hulshof owned and Robert Hulshof operated pursuant to a share-crop agreement.

There was substantial evidence in support of the trial court's findings. This court defers to the trial court's opportunity to have judged the credibility of the witnesses who testified at trial. The trial court concluded that the weight of the evidence supported its findings. A review of the record on appeal does not leave this court "with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

█ The findings of the trial court that progressive damage would continue to the Hulshof farm and that, unless restrained, it would likely result in a multiplicity of suits sufficed as a determination that plaintiffs had no adequate remedy at law with respect to their claims in Count V. *See* 66 C.J.S. *Nuisances* § 116 (1950); *see also* 58 Am.Jur.2d *Nuisances* § 333 (1989). Noranda's second point is denied.

Noranda asserts, for its third point, that the trial court erred because it failed to make a finding that was required in order to grant injunctive relief. Noranda says that the trial court was required to include as part of "the Findings of Fact and Conclusions of Law which accompanied the injunction order" a determination "that Noranda's use of its property was unreasonable."

As discussed, the trial court did make specific findings that are part of the order that sets forth the injunction that issued. Those findings were sufficient to support a determination that Noranda used its property so as to constitute an unreasonable, unusual, or unnatural use that substantially impaired plaintiffs' right to peacefully enjoy the Hulshof farm. The question for resolve is whether the trial court's action in granting the injunction is erroneous because it did not include the words, "Noran-

da's use of its property was unreasonable," in the findings of fact that it made.

█ Neither Noranda nor plaintiffs requested the trial court to make written findings. There having been no such request, the trial court was not required to make specific findings. Rule 73.01(a)(2). Accordingly, the fact issues upon which written findings were not made are "considered as having been found in accordance with the result reached." *Id.* Noranda's third point is denied.

█ Noranda asserts, as its fourth point, that the trial court erred in granting the injunction because the jury verdicts that were rendered in Noranda's favor, and the trial court's entry of judgment thereon, "precluded the [plaintiffs'] nuisance claim by *res judicata*," or alternatively, that the trial court's injunction order was precluded by collateral estoppel by reason of the jury's determinations. Noranda asserts that the trial court erroneously applied the law in granting the injunction.

Res judicata precludes the same parties from relitigating a cause of action. *Ste. Genevieve Co. v. Fox*, 688 S.W.2d 392, 395 (Mo.App.1985). Collateral estoppel precludes the same parties from litigating issues that were previously determined in litigation between those parties. *Id.*

A party seeking relief for a private nuisance may seek both compensatory damages for past harm (as well as punitive damages) and injunctive relief in an effort to abate the nuisance. *See Thornbrugh v. Poulin*, 679 S.W.2d 416 (Mo.App.1984).[5] The fact that there is no showing of actual damages for past acts does not preclude the granting of appropriate injunctive relief directed to future actions. *Id.*

█ "A verdict is the sole basis of the judgment to be entered in a jury case...." *Thorne v. Thorne*, 350 S.W.2d 754, 757

---

5. This court held in *Thornbrugh*, a nuisance case in which a plaintiff sought both equitable relief of injunction and legal relief of money damages, that the trial court was permitted to sit without a jury for purposes of trying both the equitable claim and the legal claim, saying, "[T]he 'equitable clean-up doctrine' applies in Missouri, which means that where a petition requests both legal and equitable relief, unless the equitable issue is resolved before trial, or unless the trial court, after hearing evidence, determines that an equitable remedy is inappropriate, the trial court, sitting without a jury, has jurisdiction to hear and decide the legal issues, as well as the equitable ones." 679 S.W.2d at 418.

420

(Mo.1961). The verdicts that the jury returned on Counts I through IV were general verdicts. *See* Rule 71.02, n. 2, *supra.* A general verdict is a finding by the jury on all issues submitted to it, including damages. *Robinson v. Southwestern Bell Telephone Co.*, 434 S.W.2d 249, 251 (Mo. App.1968). The nature of a general verdict precludes a determination of what element or elements of plaintiffs' causes of action the jury found lacking.

The parties to this appeal did not include copies of the jury instructions in the legal files that were included in the records on appeal in this consolidated appeal.[6] There having been no issue presented about the verdict-directing instructions used in the jury trial of Counts I through IV, this court assumes that they correctly stated the elements that were required to be proven in order for plaintiffs to have been entitled to recover on their respective causes of action.

"Private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Sofka v. Thal*, 662 S.W.2d 502, 508 (Mo. banc 1983). As noted in *Frank v. Environmental Sanitation Management, Inc., supra,* at 879–80 n. 2, quoting from the Restatement (Second) of Torts, § 822 (1965):

The actor is liable in an action for damages for a non-trespassory invasion on another's interest in the private use and enjoyment of land if,

(a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and

(b) the invasion is substantial; and

(c) the actor's conduct is a legal cause of the invasion; and

(d) the invasion is either

(i) intentional and unreasonable; or

(ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct.

■ For res judicata to apply, it would be necessary to construe plaintiffs' equitable claim for the injunction as being the same cause of action as one or more of their actions at law for nuisance. For collateral estoppel (i.e., estoppel by verdict) to apply, a particular issue would have to be identifiable as having specifically been found by the jury.[7]

■ The granting of an injunction to abate a nuisance is an equitable remedy.

Equity will interfere to prevent or abate an alleged nuisance only where it appears that the resulting injury is or will be irreparable; mere diminution in the value of property by a nuisance, without irreparable mischief, is not sufficient ground for injunction.

66 C.J.S. *Nuisances* § 114a (1950).

Equity will grant relief against an alleged nuisance where the right is clear, the injury certain or at least probable, and an injunction is necessary in order to prevent multiplicity of suits or suppress interminable litigation.

*Id.* at § 114b.

The annoyance or loss complained of must be continuous or recurrent in order

6. *See* M.A.I. 22.06 (1969 New) for the format for submitting the elements of private nuisance in a jury instruction.

7. In *Haack v. Lindsay Light & Chem. Co.*, 393 Ill. 367, 66 N.E.2d 391 (1946), a general verdict was returned in a nuisance case. Twenty seven counts were submitted to the jury. The jury found in favor of the defendant on seven counts. The other twenty verdicts were returned in favor of plaintiffs. The verdicts awarded damages of $1.00. The plaintiffs then filed an equity proceeding by which they sought an injunction. The trial court held that the verdicts in the earlier case had established that the defendant's plant was a nuisance. 66

N.E.2d at 394. The Illinois Supreme Court reversed and remanded stating:

The verdicts contain no special findings of fact while the pleadings raised numerous factual issues. It can scarcely be said, therefore, that these verdicts amount to an estoppel by verdict. Under the rule as to estoppel by verdict, if there be any uncertainty as to whether an issue relied upon was necessary to be determined by the court in entering judgment in cases where more than one issue of fact is presented, estoppel will not be applied for the reason the court may have decided upon one of the other issues of fact. *Id.*

for equity to grant an abatement of the nuisance.

*Id.* at § 115.

Counts I through IV were directed to past occurrences. Count V, the equity count seeking an injunction, was directed to preventing future occurrences. The evidence that was presented included testimony that there had been harm done by Noranda to the Hulshof farm in the past; that continued operation by Noranda would increase the extent of the harm; that, at the time of trial, the amount of harm was difficult to assess. As discussed, *supra,* an inability on the part of the jury to assess the harm that had previously occurred on the Hulshof farm could have caused it to conclude that any loss was not compensable with money damages. Likewise, the jury could have determined that, at the time of the jury trial, the invasion by Noranda had not become substantial or was not then unreasonable. None of those possibilities would have precluded the trial court, in deciding Count V, from concluding that the continued operation of Noranda's facilities would result in recurrent harm; that such recurrence would result in substantial or unreasonable harm to the Hulshof property; that a multiplicity of suits would occur as a result of recurrent conduct by Noranda.

The equitable claim that sought injunctive relief (Count V) is a different cause of action from the causes of action that sought money damages (Counts I through IV). Res judicata does not apply. There is no particular issue that is identifiable as having been found by the jury. Equitable estoppel does not apply. Noranda's fourth point is denied.

The judgment is affirmed in No. 17628. The judgment is affirmed in No. 17684.

PREWITT, P.J., and CROW, J., concur.