**Oric ARNOLD, Plaintiff–Respondent,**

**v.**

**Lawrence E. MINGER, Defendant–Appellant.**

**No. SD 30452.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 17, 2011.

Rehearing Denied March 11, 2011.

Application for Transfer Denied
April 26, 2011.

Daniel C. Mizell, Lebanon, MO, for Appellant.

J. Christopher Allen, Lebanon, MO, for Respondent.

DON E. BURRELL, Judge.

Lawrence E. Minger ("Minger") appeals the portion of a judgment that ordered him to pay $115,300 to Oric Arnold ("Arnold") for wrongfully selling a unique motor vehicle owned by Arnold. Minger claims the trial court misapplied the law by basing Arnold's damages on replacement cost instead of fair market value. Because replacement cost is an appropriate measure of the value of a unique item of personal property and because Minger did not object to the evidence at trial, we affirm the judgment.

### Standard of Review

■ Arnold's claim was tried to the court without a jury. In a court-tried case, we must affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Mackey v. Goslee*, 244 S.W.3d 261, 263 (Mo.App. S.D.2008). We defer all judgments of witness credibility to the trial court, which is free to believe or disbelieve all, part, or none of the testimony of any witness. *Id.* In determining the sufficiency of the evidence, we accept as true all evidence and inferences favorable to the trial court's judgment and disregard all contrary evidence and inferences. *Id.*

## Factual and Procedural Background

Arnold and Minger were friends who formed two Missouri Limited Liability Companies for the respective purposes of fabricating and exhibiting wheel-standing racecars and jet-powered vehicles. The vehicle at issue was a 1929 Model A wheel-standing racecar Arnold had built by hand ("the wheelstander"). Arnold stored the wheelstander in a shop located on property the parties had agreed to purchase together.

In December 2005, Arnold and Minger had a falling-out. Arnold, whose name was not on the deed, was ordered by a "bunch" of officers from the Morgan County Sheriff's Department to leave the premises and was later arrested when he attempted to return.[1] About eight months later, in August 2006, Minger sold Arnold's wheelstander without Arnold's knowledge or consent for $40,000.

Arnold built the wheelstander to use in exhibitions and tug-of-war competitions throughout the country. Freddie Lee Sibley, Sr., who also built and exhibited racecars, jet cars and wheelstanders professionally for more than fifty years, testified that everything on a wheelstander must be fabricated by hand, and less than 50 people in the country build such vehicles. Sibley testified, without objection, that a conservative estimate of the cost to replace Arnold's wheelstander was $115,000. Arnold testified, without objection, that the cost to replace the wheelstander was the appropriate measure of his damages because the wheelstander was a custom vehicle.

In its written findings, the trial court found that the wheelstander was unique and virtually irreplaceable and that only a "handful of craftsmen" were capable of fabricating such a vehicle, citing *Leonard Missionary Baptist Church v. Sears, Roebuck and Co.*, 42 S.W.3d 833, 836–37 (Mo. App. E.D.2001), and *Ladeas v. Carter*, 845 S.W.2d 45, 53 (Mo.App. W.D.1992), as support for the proposition that replacement cost is the correct measure of damages in an action for the conversion of unique goods. The trial court also found that awarding Arnold the amount of money it would take to replace the wheelstander was the only way Arnold could be restored to the position he had occupied before the wheelstander was wrongfully sold by Minger. Finally, the trial court found that uncontroverted evidence established $115,300 as the cost to replace the wheelstander and entered judgment in that amount.[2]

## Analysis

Arnold's cause of action against Minger was for conversion. "Conversion is the 'unauthorized assumption and exercise of the right of ownership over the personal property of another to the exclusion of the owner's rights.'" *Ware v. McDaniel*, 899 S.W.2d 170, 173 (Mo.App. W.D.1995) (quoting *NIKA Corp. v. City of Kansas City, Missouri*, 582 F.Supp. 343, 354 (W.D.Mo.1983)). The general rule is that "[t]he proper measure of damages for the conversion of personal property is the fair market value at the time and place of the conversion." *Coffman v. Powell*, 929 S.W.2d 309, 312 (Mo.App. S.D.1996). Fair market value is "'the price which property will bring when it is offered for sale by an owner who is willing but under no compulsion to sell and is bought by a buyer who is willing or desires to purchase but is not compelled to do so.'" *Id.* (quoting *Bridge-*

---

1. The underlying case was originally filed in Morgan County, but was later transferred by the agreement of the parties to Laclede County.

2. Minger does not contest the actual amount of damages awarded; he challenges only the method used to determine them.

forth v. Proffitt, 490 S.W.2d 416, 425 (Mo. App.Spfld.D.1973)).

 As implied by the term "general," the rule has exceptions. "Unique personal property cannot be valued in the same manner as common personal property because there may not be a market for such items, and often the items have more value to the owner than anyone else." Mackey, 244 S.W.3d at 265 (citing Ladeas, 845 S.W.2d at 53–54, and Leonard Missionary Baptist Church, 42 S.W.3d at 836–37, the cases the trial court cited in its judgment). When property is unique and evidence of its fair market value is not obtainable, cost of replacement is an appropriate measure of damages. See Culver–Stockton Coll. v. Missouri Power & Light Co., 690 S.W.2d 168, 172 (Mo.App. E.D.1985), and 90 C.J.S. Trover and Conversion Section 131 (2010). "The goal of awarding damages is to compensate a party for a legally recognized loss ... [and a] party should be fully compensated for its loss, but not recover a windfall." Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc., 155 S.W.3d 50, 54 (Mo. banc 2005).

██ In the case at bar, Sibley's testimony was competent and substantial evidence that the wheelstander was unique and virtually irreplaceable. He testified that only fifty people build wheel-standing racecars, and that all of their component parts are fabricated and assembled by hand. And because Arnold had constructed the wheelstander with his own hands, the trial court could reasonably infer that the vehicle also had a special sentimental value to Arnold.[3]

██ Finally, Minger waived any argument that Sibley's testimony constituted an improper measure of damages by failing to make such an objection at trial. "A party's failure to object to testimony, evidence, or argument preserves nothing for appellate review." Riddell v. Bell, 262 S.W.3d 301, 304 (Mo.App. W.D.2008). In Waldroup v. Dravenstott, 972 S.W.2d 364 (Mo.App. W.D.1998), the Western District stated that the defendant's "failure to object to the evidence of the inflationary rate [of lumber] paved the way for the trial court to include the inflationary rate in its damages award." Id. at 371. See also, Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc., 279 S.W.3d 179, 188–89 (Mo. banc 2009) (defendant did not object to evidence of cleanup costs on the basis that costs were improperly pleaded and thus the issue was not preserved for review). Here, Minger not only failed to object to Arnold's replacement cost evidence as inadmissible, but actually invited it as Sibley's testimony that $115,000 was a conservative estimate of the cost to build a similar vehicle actually came in during Minger's cross-examination of the witness.

3. Minger argues in his brief that the trial court should have used as the appropriate measure of damages Minger's testimony that he "found a market for the vehicle and sold it on the open market for $40,000.00." Presumably if "[Arnold] were awarded the sum of $40,000, then [Arnold] could acquire the same vehicle or a similar vehicle." The actual sales price of an item would generally constitute competent evidence of its fair market value, but as Minger notes earlier in his brief, " '[f]air market value' is defined as the price which property will bring when it is offered for sale by an owner who is willing but under no compulsion to sell and is bought by a buyer who is willing or desires to purchase but is not compelled to do so" (citing Coffman, 929 S.W.2d at 312) (emphasis ours). Even if fair market value had been the appropriate measure of Arnold's damages, the evidence cited by Minger would hardly qualify as such proof because the sale was not made by an owner who was willing to sell. Minger also testified that he valued the wheelstander at $30,000 because "[s]ome of the records [Minger] [had] where [Arnold] first filed the lawsuit said it was worth 30,000, 40,000, so that's what [Minger] put down." It does not appear that Minger introduced any such records into evidence and the trial court apparently rejected his unsupported testimony.

Minger's motion for new trial also did not include any claim that the trial court had misapplied the law by using replacement cost as the measure of Arnold's damages. "Even in a court-tried case, where no post-trial motion is required to preserve substantive issues for appellate review, Rule 78.07(b) [Missouri Court Rules (2010)], we cannot address arguments that the appellant failed to raise at trial." *Pickering v. Pickering,* 314 S.W.3d 822, 835 (Mo.App. W.D.2010). "We decline to convict the trial court of error on something which it was not accorded an opportunity to rule and which is presented for the first time on appeal." *In re Estate of Dowdy,* 680 S.W.2d 362, 364 (Mo.App. E.D.1984).

Minger's point is denied, and the judgment is affirmed.

BARNEY, P.J., and LYNCH, J., concur.