**Edwin and Esther FRANK d/b/a The Frank Company, Plaintiffs–Respondents,**

v.

**SANDY ROTHSCHILD & ASSOCIATES, INC., Defendant–Appellant.**

**No. ED 75029.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 19, 1999.

James P. Gamble, St. Louis, for appellant.

Julia Pusateri, Clayton, for respondent.

MOONEY, Judge.

Sandy Rothschild & Associates, Inc. ("Tenant") appeals from a judgment in favor of Edwin and Ester Frank, d/b/a The Frank Company, in a rent dispute. On appeal, Tenant argues that 1) the trial court erroneously applied the doctrine of accord and satisfaction; 2) the trial court erroneously enforced an unlawful penalty

clause contained within the lease; and 3) the trial court's judgment is against the weight of the evidence. We affirm.

## FACTS

Tenant entered into a written lease with Westcoast Estates for office space in the Sevens Building in Clayton for a term from September 1, 1993, through August 31, 1997. The lease required Tenant to pay a stated amount of monthly rent; however, Westcoast Estates agreed to abate the rent due for the final four months of the lease term so long as Tenant was not in default under the lease at that time. Westcoast Estates was required under the lease to furnish air conditioning to the leased premises, but was absolved from liability for any failure to provide air conditioning when the failure was due to circumstances beyond its reasonable control. Edwin and Ester Frank, d/b/a/ The Frank Company, ("Landlord") received assignment of the lease when it purchased the Sevens Building from Westcoast Estates.

On June 12, 1994, Union Electric shut off power to the Sevens Building in order to replace a transformer. After electrical service to the building was restored, the air conditioning units malfunctioned. Landlord delivered a notice to its tenants that the cause of the malfunction was a strong surge of electricity upon reconnection that caused a problem with the chillers. However, the Sevens Building's maintenance engineer testified at trial that the true cause of the failure of the air conditioning units was the malfunction of six toilet flush valves which resulted in the inability of water to reach the air conditioning units on the top floor of the building. The lack of water supply to the air conditioning units caused one unit to "solidify" and caused generator failure in another. Regardless of the true cause of the failure of the air conditioning units, there was no or inadequate air conditioning in the building for several days.

On July 1, 1994, Tenant delivered a letter to Landlord's office requesting a partial abatement of the June rent for the time Landlord failed to provide adequate air conditioning. The letter also mentioned that Tenant wanted to discuss the matter with Landlord. Receiving no response from Landlord, on July 8, 1994, Tenant delivered a check in the amount of $948.41 to Landlord for the July rent. The amount of the check reflected a $316.13 reduction (25% of the base rent) for the period of time Landlord failed to provide air conditioning. The check was accompanied by a letter explaining that the reduction was to compensate Tenant "for the lack of adequate air conditioning during the month of June." The letter also stated that the check was tendered as "payment in full." Landlord received and deposited Tenant's check, and the check cleared the bank on July 14, 1994. On July 27, 1994, Landlord sent a letter to Tenant demanding the remaining $316.13 due on the July rent. Tenant responded by letter, which included a check for the August 1994 rent, stating that Tenant considered the issue of the July rent closed and that all payments due under the lease were current as of the enclosed payment.

Tenant never paid the $316.13 deducted from the July rent. Because Landlord considered Tenant delinquent in its rent obligations at the end of the lease term, Landlord demanded the rent for the final four months. Tenant refused to pay, and in June 1997, Landlord filed this action against Tenant. As relief, Landlord sought the $316.13 that Tenant withheld from the July 1994 rent, the rent for the last four months of the lease term, interest, attorneys' fees and costs. Tenant asserted the affirmative defense of accord and satisfaction. Following a bench trial, the trial court rendered judgment in favor of Landlord in the amount of $11,470.71. Tenant filed a Motion for New Trial or Alternatively to Amend the Judgment. The trial court denied the motion, and Tenant timely filed this appeal.

## STANDARD OF REVIEW

This matter was court-tried and no party requested that the trial court make findings of fact or conclusions of law. In court-tried cases, we will affirm the judgment of the trial court unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence or the judgment erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976). Further, all issues as to which no specific findings of fact are made are presumed found in accordance with the result reached. Rule 73.01(a)(3).

## ANALYSIS

### I.

■ In its first point on appeal, Tenant asserts that the doctrine of accord and satisfaction bars Landlord's claim for the withheld July rent. Tenant argues that there was a good faith dispute as to the amount of rent owed in that it is arguable that Landlord breached the lease provision requiring Landlord to provide air conditioning. Tenant argues that the true cause of the air conditioning failure was the strong surge of electricity upon reconnection and that, because Landlord could and should have taken precautions to ensure that Union Electric's actions had no effect on the air conditioning units, the failure of the air conditioning units was not beyond Landlord's control. Thus, Tenant claims that Landlord's negligence in failing to protect its equipment from harm provided the basis for a good faith dispute as to the amount of rent owed, and that therefore its partial rent payment in July 1994 served as an accord and satisfaction when cashed by Landlord. We disagree.

■ When there is a good faith dispute as to the amount of a debt, the creditor's acceptance of partial payment by negotiating a check that has been offered as payment in full, operates as an accord and satisfaction. *Helton Constr. Co., Inc. v. Thrift*, 865 S.W.2d 419, 424 (Mo.App. S.D.

1993). However, where the underlying debt is settled and undisputed in amount, the debtor's unilateral action in claiming a set-off or reduction does not serve to modify the original agreement as to the settled amount due and owing. *See Ayers Plastics Co., Inc. v. Packaging Products Corp.*, 597 S.W.2d 177, 182 (Mo.App. W.D.1979); 1 C.J.S. *Accord and Satisfaction* § 50 (1985). Under such circumstances the debt is considered liquidated, and no accord and satisfaction lies unless the debtor can demonstrate some other form of consideration in support of the accord. *Id.*

Here, the underlying debt was liquidated in amount. The lease specifically required Tenant to pay exactly $1,264.54 for each month's rent during the time in question. Thus, the only dispute was over whether Tenant was entitled to a reduction for the period of time he was unable to use his office space due to no or inadequate air conditioning, and, if so, the amount of any such reduction. Because the underlying debt was settled in amount and only the amount of the reduction was disputed, no accord and satisfaction occurred upon Landlord's acceptance of Tenant's partial payment of the July rent under the rule stated above. Point denied.

### II.

■ In its second point on appeal, Tenant challenges the trial court's award of damages, which included a sum representing the unpaid final four months' rent that, pursuant to a clause in the lease, Landlord had agreed to abate if Tenant was not in default. The clause at issue states, "If Tenant is not in default hereunder, Landlord agrees to fully abate the Base Rent for the last four (4) months of the term hereof." Tenant characterizes this provision as an unenforceable penalty clause. We disagree.

■ A liquidated damages provision is a measure of compensation, which, at the time of contracting, the parties agree will represent damages in case of breach.

*Diffley v. Royal Papers, Inc.,* 948 S.W.2d 244, 246 (Mo.App. E.D.1997). When such a clause represents a reasonable forecast of the harm caused by the breach and the harm is of a type that is difficult to accurately estimate, courts will enforce it as a liquidated damages provision. *Id.* However, the provision must be formulated to compensate the plaintiff for damages he would suffer as a result of a breach of the contract; otherwise courts will construe it as a penalty clause designed primarily to compel performance and will refuse to enforce it. *Id.* at 247.

Here, the clause at issue neither attempted to estimate damages nor exact a penalty for breach. Rather, the clause simply rewards Tenant for prompt payment. We fail to see how this provision could be characterized as an unenforceable penalty clause under the circumstances.

The parties have provided us with no citations to cases directly on point. Our own research has unearthed only two such cases in any jurisdiction, *Lesatz v. Standard Green Meadows,* 164 Mich.App. 122, 416 N.W.2d 334 (1987) and *Manning & Associates v. Trizec Properties,* 212 Ga. App. 600, 442 S.E.2d 783 (1994), and in both cases, the courts refused to label such provisions unenforceable penalty clauses. We find the reasoning of these cases persuasive. As noted by the *Manning* court, Tenant was placed in a better position by the provision's inclusion in the lease. Had this provision not been included, Tenant unquestionably would have been responsible for paying the final four months' rent. Essentially, by asking us to declare the provision an unenforceable penalty, Tenant now asks us to reward it for being in breach of the lease by allowing it retain the benefit of the provision despite the fact that it is no longer entitled to claim such benefit. We find Tenant's position in this regard to be patently unfair to Landlord. The clause at issue was an agreed upon incentive for Tenant to promptly pay its rent and was not an attempt to exact a penalty. Accordingly, we hold that the trial court did not err in enforcing this clause and correctly awarded Landlord the final four months' rent which became due upon Tenant's breach. Point denied.

## III.

In its third point, Tenant argues that the judgment is against the weight of the evidence in that the evidence adduced at trial showed that the failure of the air conditioning was due to a condition clearly within Landlord's reasonable control. Tenant also argues that it is entitled to a new trial on the basis of newly discovered evidence.

We reverse a judgment as against the weight of the evidence only with caution and a firm belief that it is wrong. *Kennedy v. Jasper,* 928 S.W.2d 395, 397 (Mo.App. E.D.1996). Further, conflicts in the evidence are for the trial court to resolve, and we view the evidence in the light most favorable to the judgment. *Id.*

Landlord's building maintenance engineer testified at trial that the failure of the air conditioning units was due to the malfunction of several toilet flush valves on a lower floor resulting in inadequate water supply to the air conditioning units on the top floor. Landlord also argues, and Tenant does not appear to dispute, that the malfunction of toilet flush valves is a circumstance beyond Landlord's control. Although Tenant presented a different theory as to the cause of the failure of the air conditioners, the trial court was free to believe or disbelieve either theory. The testimony of the building maintenance engineer clearly constitutes substantial evidence in support of the trial court's award.

Finally, Tenant claims that it is entitled to a new trial on the basis of newly discovered evidence that shows the failure of the air conditioning units could not have occurred as Landlord claimed at trial. We find no merit in this contention.

Motions for new trial on the basis of newly discovered evidence are "left to the sound discretion of the trial court, viewed with disfavor and are granted only

in exceptional circumstances." *M.E.S. v. Daughters of Charity Services of St. Louis*, 975 S.W.2d 477, 482 (Mo.App. E.D. 1998). To prevail, the proponent of such a motion must prove that "(1) the evidence has come to its knowledge since the trial, (2) due diligence would not have discovered the evidence sooner, (3) the evidence is so material that a different decision would result, (4) it is not cumulative, (5) the affidavit of the witness must be produced or its absence accounted for, and (6) the objective of the evidence is not to impeach the character or credit of a witness." *Belden v. Chicago Title Ins. Co.*, 958 S.W.2d 54, 57 (Mo.App. E.D.1997).

Here, Tenant has failed to demonstrate that it exercised due diligence in discovering this evidence prior to trial. We note that Tenant chose not to propound interrogatories or depose Landlord's expert on this issue, and such discovery methods likely would have revealed this information. Therefore, the trial court did not abuse its discretion in denying Tenant's motion for new trial on the grounds of newly discovered evidence. Point denied.

The judgment is affirmed.

RICHARD B. TEITELMAN, P.J. and CLIFFORD H. AHRENS, J., concur.