Zbigniew **KUCZYNSKI** and Margaret **Kuczynski** d/b/a Zack Commercial Cleaning, Respondents,

v.

**INTENSIVE MAINTENANCE CARE, INC.,** Appellant.

No. ED 77890.

Missouri Court of Appeals, Eastern District, Division One.

May 9, 2001.

Jonathan E. Fortman, St. Louis, MO, for appellant.

William F. Whealen, Jr., St. Louis, MO, for respondents.

ROBERT G. DOWD, Jr., Presiding Judge.

Intensive Maintenance Care, Inc. (Contractor), appeals from the trial court's judgment, entered pursuant to a jury verdict in which Zbigniew and Margaret Kuczynski (Subcontractor) were awarded $83,462 .52 on their claim and Contractor was awarded $8,400.00 on its counterclaim. Contractor disputes the amount awarded on its counterclaim. Contractor contends the trial court erred in overruling its motion for new trial because the jury verdict on Contractor's counterclaim, specifically the amount of damages awarded by the jury, was against the weight of the evidence, not supported by substantial evidence, and grossly inadequate so as to indicate bias and prejudice. We reverse and remand for a new trial on damages.

■ On appeal in a jury-tried case, we review the evidence and reasonable inferences therefrom in the light most favorable to the verdict, disregarding evidence to the contrary. *Dubinsky v. U.S. Elevator Corp.*, 22 S.W.3d 747, 749 (Mo. App. E.D.2000). We will reverse a judgment based on a jury verdict for insufficient evidence only where there is a complete absence of probative facts to supports the jury's conclusion. *Id.* Thus, where reasonable minds can differ on the question before the jury, we do not disturb the jury's verdict. *Id.*

The record, viewed in the light most favorable to the jury verdict, reveals that Subcontractor operated a floor care business known as Zack Commercial Cleaning. In late 1997, Subcontractor entered into a subcontractor agreement with Contractor. Contractor is a corporation engaged in the business of sale and management of floor

care services to retail establishments by hiring cleaning subcontractors to service Contractor's accounts. Under the agreement, Subcontractor was to provide floor care services to some of Contractor's customers, including several Kroger and Wal-Mart stores, in the Atlanta, Georgia area. Under the agreement, Subcontractor was required to give fifteen days' notice before terminating the subcontractor agreement. The agreement contained a provision for liquidated damages in the event of a breach. The liquidated damages clause provided that in the event of a breach, Contractor would be entitled to "20% of one-year's gross payments to be paid by customer under th[e] contract."

During the course of the business relationship, several issues arose concerning payment of service fees to Subcontractor. Subcontractor alleged they had provided service on numerous occasions but had not received payment. Ultimately, Subcontractor terminated the subcontractor agreement without giving the notice required by the contract.

Subcontractor filed a claim to recover payment of service fees allegedly owed by Contractor. Contractor filed a counterclaim alleging Subcontractor breached the subcontract agreement by soliciting Contractor's customers and by failing to give fifteen days' notice prior to terminating the subcontractor agreement, and therefore, Contractor was entitled to damages pursuant to the liquidated damages clause.

The jury found in favor of Subcontractor on its claim and awarded it $83,462.52. The jury also found Subcontractor breached the contract by failing to give fifteen days' notice and awarded Contractor $8,400.00 on its counterclaim. Contractor filed a Motion for a New Trial as to the amount of damages awarded on its counterclaim. The trial court denied the motion. Contractor now appeals the award of damages on its counterclaim.

■ In its sole point, Contractor argues the jury verdict was against the weight of the evidence, not supported by substantial evidence, and grossly inadequate so as to indicate bias and prejudice. Contractor contends that the $8,400.00 awarded to it as liquidated damages is not supported by the evidence because that amount is not 20 percent of any amount presented to the jury. We agree.[1]

The damages instruction given, without objection, was as follows: "If you find in favor of defendant, then you must award defendant such sum as you believe defendant and plaintiffs agreed upon in the contract as liquidated damages." This instruction was a modified version of MAI 4.05. MAI 4.05 is an instruction for a broker's commission when there is an agreed upon percentage of commission. During the instruction conference, the trial court found this to be an appropriate instruction under these facts where there was an agreed upon percentage in the liquidated damages clause.

■ The liquidated damages clause provided that in the event of a breach, Contractor would be entitled to "20% of one-year's gross payments to be paid by customer under th[e] contract." "A liquidated damages provision is a measure of compensation, which, at the time of contracting, the parties agree will represent dam-

1. Subcontractor argues at the outset that denial of a motion for a new trial is not an appealable order; appeal must be taken from the judgment to which the motion was directed. *Yaeger v. Olympic Marine Co.,* 983 S.W.2d 173, 185 (Mo.App. E.D.1998). In its notice of appeal, however, Contractor specifically states it appeals from the judgment entered on the counterclaim. Thus, we will address the merits of Contractor's claim of error regarding the judgment.

ages in case of breach." *Frank v. Sandy Rothschild & Associates, Inc.*, 4 S.W.3d 602, 605 (Mo.App.E.D.1999). When such a clause represents a reasonable forecast of harm caused by the breach and the harm is the type that is difficult to accurately estimate, courts will enforce the liquidated damages provision. *Id.*

It was not disputed that the liquidated damages provision in the agreement between Subcontractor and Contractor was valid and enforceable. Because the parties agreed as a provision in the contract that 20% of gross payments would be the liquidated damages amount, the jury was required to use that percentage in calculating the amount of damages if it found Subcontractor breached the agreement.

By returning a verdict in favor of Contractor on its counterclaim, the jury found Subcontractor had breached the contract. Therefore, the percentage in the liquidated damages clause should have been used to determine the amount of damages to be awarded. The trial court recognized the calculation of Contractor's damages would require a mathematical calculation by the jury based upon the liquidated damages clause. The damages instruction leaves discretion to the jury only to determine the amount due by deciding which, if any, "customers" to use in arriving at a damages amount. After that determination, the jury was required to find 20 percent of that amount as liquidated damages.

Here, there is no evidence in the record to support the jury's verdict. At trial, Contractor presented evidence that at the time of the breach, Subcontractor provided service to ten Kroger stores and two Wal–Mart stores. The gross amount paid to Contractor by those customers was $17,684.00 per week. The amount paid to Subcontractor by Contractor for those accounts was $14,170.00 per week. Contractor presented evidence that if using those numbers, one-year's gross payment to Contractor by its customers would be $919,568.00 and the amount paid to Subcontractor would be $736,840.00. This evidence was uncontroverted at trial. During closing arguments, Contractor sought damages only for the stores Contractor claimed to have lost as a result of Subcontractor's breach. According to the evidence presented at trial, the gross amount to be paid to Contractor by those accounts over one-year period was $591,968.00 and 20 percent of that amount would be $118,393.60.

Here, the jury awarded Contractor $8,400.00 on its claim. However, there is no evidence to support an award of $8,400.00. The amount awarded by the jury does not even rise to 20 percent of the gross amounts received by any one customer account serviced by Subcontractor. According to the unconverted evidence, the account with the lowest weekly billing was a Kroger store at $925.00 per week, with a gross billing figure of $48,100.00 for one year. Twenty percent of that amount would be $9,620.00. It is apparent from the evidence that the jury did not apply the percentage from the liquidated damages provision in the agreement. There is no evidence in the record to support the jury's award of $8,400.00. Thus, we find a complete absence of probative facts to support the jury verdict and must reverse and remand for a new trial on damages only.

Reversed and remanded for a new trial on damages.

MARY RHODES RUSSELL and RICHARD B. TEITELMAN, JJ., concur.