MIHLFELD & ASSOCIATES, INC., and Global Transportation Systems, Inc., Plaintiffs/Appellants/Respondents,

v.

BISHOP & BISHOP, L.L.C., Bishop Enterprises, and William Bishop, Defendants/Respondents,

and

Michael Rootes, Defendant/Respondent/Cross–Appellant.

Nos. SD 28885, SD 29622.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 10, 2009.

Motion for Rehearing and Transfer Denied Aug. 31, 2009.

Rodney H. Nichols and John E. Price, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, MO, for Appellants.

Joseph L. Johnson and Bryan Berry, Lathrop & Gage, L.C., Springfield, MO, for Respondents Bishop & Bishop, Ent., and William Bishop.

Gregory Groves, Lowther Johnson, Springfield, MO, for Respondent Michael Rootes.

GARY W. LYNCH, Chief Judge.

Mihlfeld & Associates, Inc. ("Mihlfeld") and Global Transportation Systems, Inc. ("GTSI") (collectively "Appellants") brought the underlying action, seeking to enforce restrictive covenants and non-competition provisions contained in written employment agreements against two former employees, William Bishop ("Bishop") and Michael Rootes ("Rootes"), and a competing company founded by Bishop and his wife, Bishop & Bishop Enterprises, LLC ("Bishop Enterprises") (collectively "Respondents"). The cause was tried before the trial court on Appellants' second amended petition and resulted in the trial court's judgment[1] entered on October 30, 2008. The judgment awarded Appellants permanent injunctive relief against Rootes and Bishop and awarded Mihlfeld money damages on several of its claims.[2] Appellants raise five points in their appeal related solely to the issue of the various damages either assessed or not assessed by the trial court. On Appellants' third point, we reverse and remand to the trial court with directions to award Mihlfeld attorney fees against Rootes, pursuant to his employment agreement. This Court finds no merit in Appellants' other points.

Rootes filed a cross-appeal, claiming that the trial court erred when it entered a permanent injunction in the same form as the preliminary injunction without limiting it to the contractual time period of the restrictive covenants in Rootes's employment agreement. This Court agrees and reverses and remands the judgment to the trial court with directions to issue an injunction in a manner that limits the restriction to the time period as agreed to by the parties in Rootes's employment agreement. Additionally, Rootes challenges the trial court's assessment of damages against him in two respects. His second point alleges that the trial court erred in awarding Mihlfeld the sum of $3,315.00 in damages against him in both Counts VI and VII. This Court finds, however, that the awards properly compensate Mihlfeld for two separate injuries. Rootes's third point on appeal challenges the trial court's award to Mihlfeld of both liquidated damages under Count V and actual damages of $7,183.00 for disclosing an agency agreement under Count VII. Finding that this portion of the damage award in Count VII compensates Mihlfeld for an injury contemplated by the liquidated damages awarded under Count V for breach of the employment agreement, this Court reverses that portion of the judgment on Count VII as to Rootes.

### Factual and Procedural History

Mihlfeld is a Missouri corporation, located in Springfield, Missouri, which engages

1. Due to the intervening retirement of the judge who heard the trial of this case, the parties encountered difficulty in obtaining the entry of a final judgment which was subject to appeal. On October 30, 2008, the parties filed a Stipulation Concerning Entry of Judgment wherein they stipulated and agreed "that the Court should enter the Final Judgment in the form attached … to … provide a Final Judgment that disposes of all parties and all issues in the cause." The trial court effectuated that stipulation by executing a document entitled "Final Judgment" on that same date. This document will be referred to in this opinion as the "judgment." While the parties have disputed among themselves and in this Court the effect of this stipulation, it is clear from its language that the parties only stipulated to the procedural form of the judgment and did not stipulate to its substantive content.

2. GTSI was not awarded any monetary damages in the judgment. Appellants, however, make no claim of trial court error in this appeal based upon either the judgment's disparate treatment of GTSI as compared to Mihlfeld or any legal basis that would entitle GTSI to monetary damages in addition to those to which Mihlfeld is entitled or in the absence of an award to Mihlfeld.

in the business of third-party logistics management and provides all services to its clients from its office in Springfield. GTSI, also a Missouri corporation, operates as a freight broker, and generally is used to coordinate difficult shipments or shipments on particular lanes for some of Mihlfeld's customers. These two companies share common ownership and office space. Marshall Mihlfeld is the president of both companies.

In 1994, Marshall Mihlfeld hired Bishop to work as a sales representative and account manager for Mihlfeld. Bishop was employed under the terms of an employment agreement that contained a non-competition clause. Bishop later became vice president of both Mihlfeld and GTSI, and was a shareholder of both companies until he was terminated in August 2004.[3]

Although originally hired as a sales representative, Bishop's job duties with Mihlfeld evolved and expanded over time. Beginning in January 2003, Bishop began running the day-to-day operations of Mihlfeld and GTSI. From January 2003 until late July 2004, Bishop generally oversaw all operations within the company, including sales staff. There was no information about Mihlfeld or GTSI to which Bishop did not have access. Bishop's responsibilities included setting company policy, including requiring all sales and management staff to sign employment agreements with non-solicitation and non-competition provisions.

In January 2002, Rootes was hired by Appellants as a sales representative and executed an employment agreement. That agreement had three provisions pertinent to this appeal. First, it prohibited Rootes from disclosing Appellants' internal and/or proprietary information to third parties and from misappropriating, misusing, and/or disclosing Appellants' confidential and proprietary information, including that which was maintained in Appellants' computer database. Second, it prohibited Rootes, for a period of three years from the date his employment with Mihlfeld ended, from contacting any of Mihlfeld's actual or in-process[4] customers or from working for a competitor. Third, it contained a liquidated damages provision, which provided that in the event Rootes breached the agreement, Appellants would be entitled to liquidated damages in the amount of $200.00 for each day that he breached the agreement and, in addition, recovery of their reasonable attorney fees. The trial court found that the three-year time limitation, the geographic scope of the restrictive covenants, and the liquidated

3. Within thirty days of his termination by Mihlfeld, Bishop and his wife formed Bishop Enterprises. Bishop Enterprises is also a logistics management business in Missouri which follows many of the same procedures as Mihlfeld. According to Bishop's employment agreement with Mihlfeld, he was prohibited from operating a competing business for three years from termination of his employment, but only if he was terminated for cause as defined by the contract. Bishop's employment agreement provided that cause for his termination would exist if he failed to remedy certain conduct within ten days from receipt of a written warning from Mihlfeld. Marshall Mihlfeld acknowledged that Bishop was not terminated for cause as defined in the contract because the written warning procedure was not followed. Mihlfeld acknowledged that it was not a violation of Bishop's employment agreement for him to establish a competing business following termination from Mihlfeld.

4. The employment agreement provides, in part, that "an account shall be considered 'in process' when [an appellant] has contacted a potential customer and is in the process of submitting a presentation to said potential customer and/or has made a presentation to said potential customer, and said potential customer has not declined the services of [an appellant]."

damages provisions in the employment agreement were reasonable under the circumstances. These findings are not challenged in this appeal.

While employed by Appellants and after Bishop was terminated by Appellants, Rootes provided Bishop with copies of Mihlfeld's and GTSI's internal documents, including Mihlfeld's logistics survey and limited agency agreement ("agency agreement"). Appellants were unaware that Rootes had provided these documents to Bishop and did not authorize Bishop's use of the documents. In addition to providing Bishop with Appellants' internal documents, Rootes, while still employed by Appellants, also referred some of Appellants' in-process customers to Bishop Enterprises.

From November 2005 through Rootes's termination by Appellants in March 2006, Rootes conducted business activities with Bishop for the benefit of Bishop Enterprises. In November 2005, Rootes and Bishop Enterprises split the cost of a subscription agreement to Selectory Online, a customer-lead database operated by a third party, which both Rootes and Bishop could utilize to contact prospective customers. In February 2006, Rootes downloaded customer-lead information from Mihlfeld's computer database and sent the information to himself as attachments in e-mails. Finally, on February 26, 2006, Bishop offered Rootes a job as a sales representative with Bishop Enterprises. Rootes accepted the job the next day, although he did not start until after he was terminated by Appellants.

In February 2006, Appellants became aware that Rootes had not procured a sale for them since before November 2005 and advised Rootes that he had thirty days within which to obtain a contract with a customer or he would be terminated. On March 17, 2006, Appellants locked Rootes out of Appellants' computer database and

on March 20, 2006, advised Rootes that his employment was terminated. Rootes immediately began working for Bishop Enterprises.

One of the items that Rootes e-mailed to himself while working for Appellants contained a list of more than 1,500 of Appellants' in-process accounts. While working at Bishop Enterprises, Rootes contacted at least thirteen of the names on this list.

In August 2006, Appellants filed their petition initiating this action and requested a temporary restraining order to bar Rootes's and Bishop's continued use of Appellants' proprietary information. On August 11, 2006, a temporary restraining order, effective for fifteen days, was entered prohibiting Rootes and Bishop from, among other things, using or disclosing Appellants' confidential and proprietary information and prohibiting Rootes from contacting any of Appellants' existing or in-process accounts. The restraining order was extended for two additional fifteen-day periods by agreement of the parties. On September 21, 2006, the parties appeared and agreed to the entry of a preliminary injunction. The preliminary injunction contained the same prohibitions as those in the temporary restraining order and was to remain in effect "until further Order of the Court." A three-day trial began on April 11, 2007. Before any evidence was heard, Rootes stipulated to the injunctive relief being made "permanent throughout the remaining term of [Rootes's] covenant not to compete."

At trial, Appellants sought substantial damages representing the value of data misappropriated, compensation paid to Rootes after November 21, 2005, costs expended by Mihlfeld to develop the agency agreement and logistics survey, lost profits, lost sales opportunity, lost goodwill, trial expenses, punitive damages, and at-

torney fees; altogether, Appellants sought more than $4 million in damages.

The case was tried on Appellants' second amended petition, which contained fourteen separate counts. Two counts were abandoned at trial, and three counts were settled before the trial began. In its judgment, the trial court adopted most of Appellants' proposed findings of fact and entered conclusions of law finding in favor of Appellants on six counts and in favor of Respondents on the three remaining counts.

Additional facts specific to the points raised on appeal will be set forth as necessary in the discussion of each point.

### Standard of Review

■ In a court-tried case, the judgment of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Jamison v. State of Mo., Dept. of Social Servs.*, 218 S.W.3d 399, 404 (Mo. banc 2007); *Citizens Nat'l Bank v. Maries County Bank*, 244 S.W.3d 266, 270 (Mo.App.2008). This Court gives deference to the trial court's determinations of credibility but reviews questions of law *de novo. Tolliver v. Dir. of Revenue*, 117 S.W.3d 191, 196 (Mo.App.2003).

### Mihlfeld's and GTSI's Appeal No. SD28885

Appellants assert five points of alleged trial court error in their appeal. They will be addressed in the order presented.

5. All references to statutes are to RSMo 2000, unless otherwise indicated.

6. GTSI was not awarded any monetary damages in the judgment. Appellants, however, make no claim of trial court error in this

### Point One: No additional damages for Respondents' violation of Section 417.457.

Appellants argue that the trial court erred in failing to award monetary damages on Count XIII, alleging misappropriation of trade secrets, because the trial court was required to award damages pursuant to section 417.457.1.[5] A review of the entire judgment, however, indicates that although the trial court did not award damages specifically under Count XIII, damages for the injuries caused by the wrongful acts alleged in Count XIII were awarded under Counts V, VI, and VII.

In Count XIII, Appellants alleged misappropriation of trade secrets under the Missouri Uniform Trade Secrets Act, sections 417.450, et seq. Specifically, Appellants alleged that Respondents were responsible for misappropriating Appellants' customer lists, in-process lists, and lead information. Under Count XIII, Appellants requested three categories of damages occasioned by Respondents' acts: (1) an amount equal to the value of the data misappropriated; (2) fees paid to BKD in connection with forensic analysis and investigation; and (3) attorney fees. The trial court entered judgment for Mihlfeld on Count XIII, but stated that Mihlfeld was entitled to "no additional damages." Mihlfeld argues on appeal that, because the trial court found in its favor, section 417.457.1 requires the trial court to award damages.[6]

Section 417.457.1 provides:

Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know

appeal based upon either the judgment's disparate treatment of GTSI as compared to Mihlfeld or any legal basis that would entitle GTSI to monetary damages in the absence of such an award to Mihlfeld.

of misappropriation renders a monetary recovery inequitable, a complainant **is entitled to recover damages for misappropriation.** Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriated unauthorized disclosure or use of a trade secret. (Emphasis added).

 Although section 417.457.1 provides that Mihlfeld is "entitled to recover damages," Mihlfeld is not entitled to multiple recoveries for the same injury. A plaintiff is entitled to proceed on various theories of recovery, but cannot receive duplicative damages; instead, a plaintiff must establish a separate injury on each theory. *Norber v. Marcotte,* 134 S.W.3d 651, 661 (Mo.App.2004). Here, Mihlfeld alleged the same injury and requested the same measure of damages on three other counts in which it prevailed and was awarded damages.

The three categories of damages sought under Count XIII duplicated the damages sought in Counts V, VI, and VII. First, in Count XIII, Appellants requested damages in an amount equal to the value of the data misappropriated. In Count V, however, Appellants also sought, and Mihlfeld was awarded, liquidated damages against Rootes under his employment contract, which Appellants claimed he breached by misappropriating their data, in addition to his other actions. Similarly, in Count VI, Appellants sought, and Mihlfeld was awarded, damages against Rootes for the "value of its data and documents improperly taken." Likewise, Appellants sought, and Mihlfeld was awarded, damages

against Bishop under Count VII for the "[v]alue of data owned by Mihlfeld which was misappropriated[.]" Second, in Count XIII, Appellants requested damages for fees paid to BKD in connection with forensic analysis and investigation. Appellants, however, also requested damages for fees paid to BKD in Count VII, and Mihlfeld was awarded such fees against Rootes and Bishop in the judgment on that count. Third, Appellants requested an award of attorney fees under Count XIII. Although attorney fees are not part of the "actual losses" provided for in section 417.457.1, we note: (1) Appellants also asked for attorney fees in multiple counts; (2) Appellants should have been awarded attorney fees against Rootes under the terms of the employment agreement under Count V, as is more fully discussed under Appellants' third point, *infra;* and (3) Mihlfeld was awarded attorney fees against Bishop in the judgment on Count XIV. Appellants did not allege any damages unique to the misappropriation alleged in Count XIII.

While it is appropriate for Appellants to proceed on multiple theories, Appellants must allege and prove damages specific to each theory in order to support multiple awards. The trial court's judgment on Count XIII states that judgment is for Mihlfeld and "no *additional* damages" would be assessed (emphasis added). It is clear that the trial court contemplated the appropriate award of damages based on substantial evidence in the record and determined that Mihlfeld's actual damages under this count were fully satisfied by other damage awards in the judgment. Point one is denied.

*Point Two: Award of liquidated damages for the time period beginning February 27, 2006, and ending on August 11, 2006, is supported by substantial evidence.*

In Count V, Appellants asserted a breach of contract claim against Rootes

and sought enforcement of the liquidated damages provision in his employment agreement based upon Rootes's misappropriation of confidential and proprietary data. The employment agreement contains the following liquidated damages provision:

That in the event of any such prohibited competition, use, or disclosure, Mihlfeld shall be authorized and entitled to obtain both pendent lite and permanent injunctive relief since the remedy at law would be non-existent and/or inadequate. In addition, Employee agrees that in the event employee breaches this Agreement, Mihlfeld shall be entitled to liquidated damages in the amount of $200.00 for each day that Employee breaches this Agreement, or 50% of Mihlfeld's gross billings to any customer associated with any such breach, if any, in any month in which a breach shall occur, whichever is greater, and in addition, Mihlfeld shall be entitled to recover all costs associated with enforcement of this Agreement, including, but not limited to, Mihlfeld's reasonable attorneys' fees and expenses. Employee acknowledges that in the event of a breach of this Agreement, Mihlfeld shall be entitled to recover injunctive relief as well as liquidated damages, and that the liquidated damages provision included herein does not provide Mihlfeld with an adequate remedy at law for any breach which Employee may commit.

The trial court specifically found that the liquidated damages provision "represented a reasonable forecast of damage Mihlfeld could suffer as a result of a breach by Rootes." The trial court also found that the liquidated damages provision was enforceable. The trial court awarded Appellants liquidated damages in the amount of $36,000.00 for the period of February 27, 2006, through the date the trial court entered a temporary restraining order against Respondents.[7] Appellants claim that the award is contrary to the judgment and not supported by substantial evidence, in that the trial court found that Rootes was in breach of his employment agreement as of November 21, 2005. Appellants further claim that Rootes was in continuous breach through the end of the trial on April 13, 2007, and, therefore, Appellants should have been awarded liquidated damages in the amount of $200.00 per day for 508 days, or $101,600.00.

■ When a liquidated damages clause represents a reasonable forecast of harm caused by a breach of contract, and the harm is of the type that is difficult to accurately estimate, courts will enforce the liquidated damages provision. *Kuczynski v. Intensive Maint. Care, Inc.*, 48 S.W.3d 55, 57 (Mo.App.2001). A plaintiff must show at least some actual harm or damage caused by a breach, however, before a liquidated damages clause can be triggered. *Grand Bissell Towers, Inc. v. Joan Gagnon Enters., Inc.*, 657 S.W.2d 378, 379 (Mo.App.1983).

Appellants contend that the trial court erred in its determinations of both the start and end dates of the liquidated damages period. Each date will be addressed in turn. The judgment indicated that the liquidated damages clause became enforceable on February 27, 2006. This is the date on which Rootes accepted employ-

---

**7.** The judgment refers to the time period between February 27, 2006, and the date of the entry of the temporary restraining order as "approximately 180 days." The temporary restraining order was entered on August 11, 2006; therefore, this time period was actually 165 days. Rootes, however, does not challenge in his appeal the trial court's calculation of $36,000.00 for liquidated damages awarded to Mihlfeld in the judgment on Count V based upon 180 days multiplied by $200.00 per day.

ment with Bishop and downloaded Mihlfeld's entire list of in-process accounts and e-mailed them to himself.

██ Appellants argue that the correct date to begin enforcement of the liquidated damages provision is November 21, 2005. This is the date that Rootes and Bishop opened an account with Selectory Online, a database that would help them find prospective clients. In its findings of fact, the trial court found that Rootes's actions as of November 21, 2005, caused him to be in violation of his employment agreement. Simply being in violation of the employment agreement, however, is not an automatic trigger to enforcement of a liquidated damages provision. It is well settled that before liability to pay liquidated damages can attach, the party in default must have been guilty of a substantial breach of his agreement which has resulted in more than mere nominal damage to the other party. *See Werner v. Finley*, 144 Mo.App. 554, 129 S.W. 73, 75 (1910).

Appellants failed to prove that any damage to them occurred as a direct result of Rootes's purchase of the Selectory Online database. The mere purchase of the database, while a technical violation of the employment agreement, was not a material breach of the employment agreement because simply owning a list of names of potential clients did not directly harm Appellants. The trial court's finding that Rootes breached his employment agreement with Appellants *and* caused them actual harm on February 27, 2006, when Rootes accepted employment with Bishop and misappropriated certain proprietary documents belonging to Appellants, is supported by substantial evidence and is not contrary to the judgment.

██ Appellants further assert that Rootes was in violation of his employment agreement through the last day of trial,

April 13, 2007, because Rootes remained in possession of the downloaded list of in-process clients. The trial court, however, only awarded liquidated damages through the date the temporary restraining order was issued on August 11, 2006. As noted previously, Appellant must show at least some actual harm or damage before a liquidated damages clause can be triggered. *Grand Bissell Towers, Inc.*, 657 S.W.2d at 379. Applying this rule to a per-day type of liquidated damages clause requires a showing of continued harm in order for the liquidated damages clause to be triggered each day and remain in effect day after day. The trial court issued a temporary restraining order on August 11, 2006, which prohibited Rootes from contacting any person on the in-process list. The temporary restraining order and that prohibition continued until the entry of the preliminary injunction on September 21, 2006. Likewise, the preliminary injunction and its prohibition remained in effect continuously until it was made permanent in the judgment. The only harm that Appellants alleged regarding the in-process list was that Rootes had begun contacting people on that list in an attempt to solicit their business away from Mihlfeld. As of the date the temporary restraining order was issued, August 11, 2006, Rootes ceased contacting customers on the in-process list. Therefore, Appellants suffered no further harm. Without proof of any continuing harm, Appellants are not entitled to further liquidated damages. Point two is denied.

***Points Three and Four: Mihlfeld was entitled to an award of contractual attorney fees against Rootes, and the amount of the award in favor of Mihlfeld and against Bishop was not an abuse of discretion***

Paragraph 5(h) of Rootes's employment agreement provides that Mihlfeld is enti-

tled to recover all costs associated with enforcement of the agreement, including its reasonable attorney fees and expenses. The trial court found that Rootes breached the employment agreement and entered judgment against him on Count V. Although Appellants presented evidence of attorney fees and expenses incurred in enforcement of the employment agreement, the trial court ordered "[n]o attorney fee award in this Count." Similarly, the trial court found that Bishop was obligated under the terms of his employment agreement to pay Mihlfeld's attorney fees on Count XIV. The trial court awarded Mihlfeld "$10,000 for investigation and proceeds [sic] leading up to a [temporary restraining order]" against Bishop, although the trial court determined that Appellants actually incurred attorney fees and expenses in the amount of $87,921.53. Appellants' third and fourth points claim error in the amounts of the trial court's awards against both Rootes and Bishop.

■■■■ Subject to certain exceptions, the well-established rule in Missouri, referred to as the "American Rule," states that a party to litigation is responsible for paying the party's own legal fees. *Williams v. Finance Plaza, Inc.*, 78 S.W.3d 175, 184 (Mo.App.2002); *Cullison v. Thiessen*, 51 S.W.3d 508, 513 (Mo.App. 2001). This is true even when the litigant is successful. *Arnold v. Edelman*, 392 S.W.2d 231, 239 (Mo.1965). The only two exceptions applicable here are: (1) where a contract between the litigating parties provides for payment of attorney fees to a prevailing party, discussed here; and (2) where attorney fees are provided for specifically by statute, discussed *infra*. *Cullison*, 51 S.W.3d at 513; *Waldroup v. Dravenstott*, 972 S.W.2d 364, 370 (Mo.App. 1998).

■■■■ "[W]hen a party requests attorney fees under a provision of a contract, the trial court must comply with the terms set forth in that contract." *Kester v. Kester*, 108 S.W.3d 213, 225 (Mo.App.2003). Determining the amount of attorney fees, however, is within the sound discretion of the trial court and should not be reversed unless the award is determined arbitrarily or is so unreasonable as to indicate indifference and lack of proper judicial consideration. *State ex rel. Laszewski v. R.L. Persons Constr., Inc.*, 136 S.W.3d 863, 873 (Mo.App.2004).

*Appellants' claim against Rootes*

■■■■ Appellants contend that the trial court misapplied the law and that they were entitled to some award of attorney fees as a matter of law following the trial court's finding that Rootes was in breach of his employment agreement with Mihlfeld. This Court agrees. Although the trial court may use its discretion to determine the amount to award in attorney fees, where a party is found to have breached the contract, the contractual provision for attorney fees requires the award of attorney fees. *Sheppard v. East*, 192 S.W.3d 518, 523 (Mo.App.2006). An award in some amount is required by the contract as a matter of law and is not a matter within the trial court's discretion. *Id.* (citing *Jackson v. Christian Salvesen Holdings, Inc.*, 978 S.W.2d 377, 385 (Mo.App. 1998)). Here, the trial court found that Rootes breached the contract, but awarded "[n]o attorney fee" against him, which is no award at all. Point three is granted.

*Appellants' claim against Bishop*

Appellants argue, at length, that the award of $10,000.00 against Bishop is an abuse of discretion because: (1) Appellants' fourteen claims were related and Appellants obtained excellent results overall; and (2) because Respondents' actions

were so egregious, an award of only $10,000.00 indicates judicial indifference.

"[T]he trial judge is an expert on the subject of attorneys' fees[.]" *O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64, 74 (Mo. banc 1989) (citing *Roberds v. Sweitzer*, 733 S.W.2d 444, 447 (Mo. banc 1987)). "In the absence of contrary evidence, the trial court is presumed to know the character of services rendered in duration, zeal, and ability, and to know the value of them according to custom, place, and circumstance." *Dominion Home Owners Ass'n, Inc. v. Martin*, 953 S.W.2d 178, 182 (Mo.App.1997). As discussed supra, the determination of the amount of attorney fees is within the sound discretion of the trial court and should not be disturbed on appeal absent a clear abuse of discretion. *Laszewski*, 136 S.W.3d at 873. Such discretion is clearly abused when the trial court's ruling is so arbitrary or unreasonable that it indicates indifference or lack of proper judicial consideration. *Id.*

Appellants fail to present this Court with any evidence of such an abuse of discretion. First, Appellants wrongly assert that they "obtained excellent results overall." Appellants originally brought fourteen counts against three defendants. Two of those counts were deemed abandoned by the trial court, and three counts seeking injunctive relief were readily agreed to by Respondents prior to trial. Three of the remaining nine counts were decided in favor of Respondents. Of the remaining six counts, two carried no monetary damages. Furthermore, on the remaining counts where Mihlfeld was both successful and awarded damages, there is a significant disparity between Mihlfeld's alleged damages and the trial court's actual damage awards. Although courts consider the result obtained by the prevailing party to be an "important factor" in determining an appropriate attorney fee award,

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the trial court was certainly within its authority to determine that Appellants should be awarded only those attorney fees expended "for investigation and proceeds [sic] leading up to a [temporary restraining order]."

Second, without citation to any relevant legal authority, Appellants' argument suggests that the trial court's award is in error because the actions of Respondents were so egregious that an award of only $10,000.00 indicates judicial indifference. Appellants spend considerable time in their brief pointing out the behavior of Respondents over the year leading up to the temporary restraining order and trial. The trial court made factual findings as to Respondents' actions and as a result rendered judgments for damages against them. While this Court does not condone in any manner Respondents' behavior as found by the trial court, it is not the function of this Court to reconsider and reweigh such conduct and undermine the discretion of the trial court by reversing discretionary awards based on our interpretation of the egregiousness of the facts. Nor will this Court disturb a trial court's award of attorney fees because an appellant argues on appeal that the respondent's behavior should be more severely punished by increasing the attorney fees awarded.

The wording of the judgment makes clear that the trial court exercised its discretion in deciding that attorney fees for services rendered after the temporary restraining order was entered were not appropriate. As stated *supra*, "the trial court is presumed to know the character of services rendered in duration, zeal, and ability, and to know the value of them according to custom, place, and circumstance." *Dominion Home Owners Ass'n,*

*Inc.*, 953 S.W.2d at 182. Nothing has been presented to show an abuse of that discretion, and the judgment for attorney fees against Bishop will not be disturbed. Point four is denied.

### Point Five: No abuse of discretion in not awarding attorney fees for Respondents' violations of sections 537.525 and 569.095

In Count VII, Appellants asserted a cause of action against Respondents under Missouri's Computer Tampering Act, as set forth in sections 569.095–569.099, RSMo Cum.Supp.2002, and section 537.525.

The damages recoverable by a plaintiff where a violation of the act is proven are set forth in section 537.525, which provides:

1. In addition to any other civil remedy available, the owner or lessee of the computer system, computer network, computer program, computer service or data may bring a civil action against any person who violates §§ 569.095–569.099, RSMo., for compensatory damages, including any expenditures reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, computer service, or data was not altered, damaged, or deleted by the access.

2. In any action brought pursuant to this section, the court **may** award reasonable attorneys' fees to a prevailing party.

(Emphasis added).

■ The trial court found that Respondents violated the act and entered its judgment "against all three [Respondents], jointly and severally, for the total sum of $3,315 for expenses to BKD and $7,183 for the Agency Agreement."[8] The trial court did not award Appellants any attorney fees. Appellants claim this was an abuse of discretion given that the actions of Respondents "were egregious, and the evidence of their conspiracy to utilize information taken from [Appellants'] computer database was overwhelming."

As discussed *supra*, "the trial judge is an expert on the subject of attorneys' fees[,]" and the determination of attorney fees is within the sound discretion of the trial court. *O'Brien*, 768 S.W.2d at 74. The statute authorizes the trial court to award attorney fees. It does not, however, require the trial court to do so. The use of the word "may" clearly indicates that the award of attorney fees is not mandatory, but is discretionary. *See State ex rel Nixon v. Boone*, 927 S.W.2d 892, 897 (Mo.App.1996) ("Use of the word 'may' in a statute implies alternate possibilities and that the conferee of the power has discretion in the exercise of the power."). For the same reasons set forth in the discussion of point four, this Court finds that the trial court did not abuse its discretion in deciding not to award additional attorney fees under Count VII. Point five is denied.

### Rootes' Cross–Appeal No. SD29622

### Point One: Permanent injunction against Rootes should have been limited to the time period of the non-solicitation clause in the employment agreement

Rootes's employment agreement contained three-year non-competition and

---

8. In its findings of fact, the trial court found that the value of the agency agreement was $260.00 and the value of the logistics survey was $6,923.08. No issue has been raised on appeal related to the trial court's characterization of the sum of those amounts as being "for the Agency Agreement."

nonsolicitation clauses, prohibiting him from having any contact with Appellants' then-existing customers or any account in process with Appellants during that period. Mihlfeld advised Rootes that his employment was terminated on March 20, 2006. Shortly after the filing of Appellants' initial petition in this action, the trial court issued the temporary restraining order, which was effective for fifteen days. By agreement of the parties, the temporary restraining order was extended for two additional fifteen-day periods. Thereafter, by stipulation of the parties, the trial court issued a preliminary injunction against Rootes enforcing the restrictive covenants in the employment contract effective "until further Order of the Court." Following trial, the trial court found that the restrictive covenants in the employment agreement were reasonable under the circumstances and enforceable. In its judgment, the trial court ordered "[b]oth [Appellants] to have permanent injunction against all three [Respondents] in the same form as the preliminary injunction." Rootes now cross-appeals, claiming the trial court erred when it did not limit the non-solicitation time period in the permanent injunction to the three-year period as agreed by the parties in the employment agreement.

 Temporally and geographically-limited restrictive covenants not to compete that protect an employer's legitimate protectable interests from unfair competition by a former employee and that do not impose unreasonable restraints on the employee are enforceable. *AEE–EMF, Inc. v. Passmore*, 906 S.W.2d 714, 719 (Mo.App. 1995). When an injunction is granted to enforce a non-competition or non-solicitation agreement, the term of the injunction begins with the date of termination, not the date of the judgment. *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 246

(Mo.App.1993). The trial court cannot extend the duration of the covenant or alter the fact that the non-compete period runs even during the pendency of litigation. *See Property Tax Representatives, Inc. v. Chatam*, 891 S.W.2d 153, 158 (Mo.App. 1995); *American Pamcor, Inc. v. Klote*, 438 S.W.2d 287, 291 (Mo.App.1969).

 The trial court erred when it entered a permanent injunction in the same form as the preliminary injunction without limiting its duration to the three-year time period agreed to in the employment agreement. The restrictive covenant period began running in this case when Rootes was notified of his termination on March 20, 2006, and, therefore, the restrictive covenant period expired on March 20, 2009. Point one of Rootes's cross-appeal is granted.

### Point Two: Amount awarded against Rootes in Counts VI and VII represented awards for different damages

 Count VI of Appellants' second amended petition, "Breach of Duty of Loyalty," against Rootes requested damages for: (1) expenses to BKD; (2) $91,892.09 in compensation paid to Rootes following his breach; and (3) the value of data improperly taken by Rootes. Count VII, alleging violation of the Computer Tampering Act against all Respondents, requested an award of damages for: (1) expenses to BKD; (2) the value of data owned and misappropriated; and (3) attorney fees. The trial court awarded "judgment for [Mihlfeld] and against Defendant Rootes in the amount of $3,315" on Count VI. The judgment provides no further description or explanation of the award. On Count VII, the trial court awarded judgment for Mihlfeld "against [Respondents], jointly and severally, for the total sum of $3,315 for expenses to BKD and $7,183 for the Agency Agreement." On cross-appeal,

Rootes argues that Appellants should not recover the sum of $3,315.00 under both counts because this amounts to a double recovery of the BKD expenses. This Court disagrees.

■ The general rule is that a party "may not recover from all sources an amount in excess of the damages sustained, or be put in a better condition than he would have been had the wrong not been committed." *Weeks–Maxwell Const. Co. v. Belger Cartage Serv.,* 409 S.W.2d 792, 796 (Mo.App.1966) (internal quotation omitted). Here, however, nothing in the judgment on Count VI gives any indication as to which of the three categories of alleged damages the award addressed. Rootes assumes that, because the judgment on Count VI is in the exact same amount as the judgment in Count VII for expenses paid by Appellants to BKD, it must have also been awarded to compensate for the BKD expenses. This assumption is based on nothing other than speculation. Rootes fails to demonstrate or argue in any manner how the $3,315.00 awarded in Count VI was not an appropriate award to compensate Mihlfeld for one of the other two categories of damages sought on this count. In such absence, this Court cannot say that the judgment allowed Mihlfeld a double recovery. Point two is denied.

***Point Three: The judgment against Rootes on Count VII in the amount of $7,183.00 for the agency agreement is an award of actual damages for which an award of liquidated damages was entered against Rootes under Count V for the same injury.***

In Count V, Appellants alleged that Rootes breached his employment agreement as a result of misappropriation of confidential information, and the trial court awarded Mihlfeld contractual liquidated damages for such breach in the amount of $36,000.00. Count VII alleged that all three Respondents misappropriated confidential information and that Rootes downloaded certain company documents in violation of his employment agreement, which violated section 537.525. The trial court entered judgment against all three Respondents, jointly and severally, for the misappropriation of the agency agreement in the amount of $7,183.00. The harm alleged in Count V—Rootes's misappropriation of confidential information—includes Rootes's misappropriation of the agency agreement, which was a separate harm alleged in Count VII.

■ "'Liquidated and actual damages generally may not be awarded as compensation for the same injury.'" *Trapp v. Barley,* 897 S.W.2d 159, 165 (Mo.App.1995) (quoting *Warstler v. Cibrian,* 859 S.W.2d 162, 165 (Mo.App.1993)). This rule has developed in order to avoid duplicating damages. *Id.* at 165–66. The employment agreement here specifically states that liquidated damages are the sole measure of damages in the event of a breach because "the remedy at law would be non-existent and/or inadequate." Although it is appropriate for Appellants to proceed under multiple theories, they are not entitled to duplicate awards of damages for the same injury. Because Appellants have contracted away their rights to all damages other than those provided for in the employment agreement, they cannot receive actual damages under section 537.525, in addition to the award of liquidated damages, for injuries arising out of conduct prohibited by that agreement. This is so, even though the trial court found that Rootes's behavior qualifies for those statutory damages, because that behavior was also conduct prohibited by the

employment agreement. Point three of Rootes's cross-appeal is granted.

### *Decision*

The portion of the judgment on Count V as it relates to attorney fees in favor of Appellants and against Rootes is reversed and the cause remanded to the trial court with directions to enter a judgment on Count V against Rootes that includes an award of attorney fees based upon the evidence as previously presented or, at the discretion of the trial court, after a new trial on that issue. The portion of the judgment granting the permanent injunction against Rootes is reversed and the cause remanded to the trial court with directions to enter an injunction with a temporal limit consistent with the restriction in the employment agreement. The judgment on Count VII in the amount of $7,183.00 against Rootes as related to the agency agreement is reversed. In all other respects, the judgment is affirmed.

PARRISH, J., and RAHMEYER, J., concur.

### *ON MOTION FOR REHEARING AND APPLICATION FOR TRANSFER*

PER CURIAM.

In its Motion for Rehearing, Mihlfeld states that "this Court holds that the permanent injunction entered by the trial court should have been limited to the three year time period agreed to in the employment agreement, and that the restrictive covenant expired March 20, 2009." Such characterization reads the holding too broadly. As stated in the opinion, Rootes challenged only the non-solicitation time period in the permanent injunction as violating the three-year period as agreed by the parties in the employment agreement. This Court found merit in that challenge, reversed that portion of the judgment granting a permanent injunction, and remanded the cause to the trial court "with directions to enter an injunction with a temporal limit consistent with the restriction in the employment agreement." Because this Court considered and ruled upon only a challenge to the time period of the non-solicitation provision in the permanent injunction, our holding is so limited.

Mihlfeld's Motion for Rehearing and Application for Transfer to Supreme Court are denied.